O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KIMBERLY N. BRADLEY, | ) | Case No. ED CV 06-772-CT |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

SUMMARY OF PROCEEDINGS

On May 24, 2001, plaintiff, Kimberly Bradley ("plaintiff") filed a complaint in case number EDCV 01-0376-MMM(CT) seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). After the parties filed cross-motions for summary judgment, the magistrate judge issued a report and recommendation recommending that the matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g). On March 6, 2002, the district judge issued an order approving and modifying the report and

recommendation. Specifically, the district judge approved the recommendation "that the record be further developed, through objective testing, to determine the sincerity and extent of the psychological impairment and its effect on the ability to work of this plaintiff who weighs over 400 pounds." (March 6, 2002 Order at 2). A judgment of remand was entered on March 7, 2002.

After the Commissioner issued another decision denying benefits on remand, plaintiff again filed a complaint seeking judicial review of the decision in case number EDCV 04-0661-CT. On September 29, 2004, the magistrate judge issued an order observing that "[o]n remand, the ALJ failed to have plaintiff undergo objective psychological testing as required by Judge Morrow's order" and ordering the parties to conduct settlement discussions. On October 26, 2004, the court issued a judgment of remand for further proceedings pursuant to the parties' stipulation. The stipulation required the ALJ to: "(1) further develop evidence regarding plaintiff's mental impairment, including psychological testing; and (2) re-evaluate plaintiff's obesity and mental impairments at step 4 and reconsideration at step 5, including possible vocational expert testimony." (October 26, 2004 Stipulation at 2).

On July 27, 2006, plaintiff filed a complaint in this action after the Commission again denied benefits on remand. Subsequently, the parties consented to proceed before the magistrate judge. On November 10, 2006, plaintiff filed a brief in support of the complaint. On December 8, 2006, the Commissioner filed an opposition brief.

SUMMARY OF ADMINISTRATIVE RECORD

1.  <u>Proceedings</u>

1    On March 1, 1999, plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since March 19, 1997, due to morbid obesity; unexplained blood clots; pain in back, neck, shoulder, right arm, and knee; shortness of breath; and depression. (TR 100-02, 109).[1] The applications were denied administratively, (TR 14-22, 87-97), and again following the court-ordered remands referenced above. (TR 238-44).

On remand from the judgment in case EDCV 04-0661-CT, a third administrative hearing was held before a different ALJ on September 14, 2005. (TR 748-57). Plaintiff, represented by counsel, appeared and testified and an ME also testified. At the ALJ's request, the ME recommended that plaintiff should be given the Minnesota Multiphasic Personality Disorder Inventory ("MMPI") to comply with the court's orders. (TR 756). On January 26, 2006, after the plaintiff was consultatively examined and the MMPI was administered, another administrative hearing was held. (TR 758-84). Plaintiff, an ME, and a VE appeared and testified at the hearing. On May 3, 2006, the ALJ issued a decision that plaintiff was not disabled, finding that she could perform a narrow range of light work. (TR 390-95). Plaintiff now seeks judicial review of that decision in this court.

2.   Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and, except as otherwise noted, materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

3

Plaintiff contends as follows:

1. The ALJ erred by failing to properly consider the consultative examiner's opinion regarding plaintiff's ability to consistently maintain employment;
2. The ALJ did not pose a complete hypothetical to the ALJ;
3. The ALJ did not make proper credibility findings; and,
4. The ALJ erred by not considering the lay witness testimony.

## STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

## DISCUSSION

1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

4

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

    2.   Issues

        A.   Consultative Examiner's Opinions

Plaintiff contends that ALJ failed to properly evaluate the opinions of Clifford Taylor, Ph.D., who examined plaintiff

consultatively on October 17, 2005.

Plaintiff testified that she weighs more than 450 pounds. (TR 762). Although the Commissioner has removed obesity from the impairments listed in Appendix 1, Subpart P, Regulations No. 4, obesity is still considered a "medically determinable impairment" and the ALJ must "consider its effects when evaluating disability." SSR 00-3p (Cum. Ed. 1999) (effective October 25, 1999). The Commissioner has specifically recognized that obesity not only can cause or exacerbate physical impairments, it "may also cause or contribute to mental impairments such as depression." See Social Security Ruling 02-1P. Plaintiff went to counseling in 2000 and 2001 for depression and has been treated by her doctor with anti-depressant medications. (See TR 337-38, 753). She was given global assessment of functioning ("GAF") scores as low as 40 by her doctors. (See TR 289(GAF score of 50) and 307(GAF score of 40)). GAF scores in this range indicate serious symptoms or serious impairment in social or occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed., text revision 2000 (DSM-IV-TR)).

On the other hand, plaintiff has no history of psychiatric hospitalizations and her only treatment has been anti-depressants (taken somewhat sporadically) and some counseling, which ended in 2001 after plaintiff repeatedly failed to show up for therapy sessions. (See TR 272, 274, 277, 282, 284, 287, 297, 301, 304, 305). Plaintiff testified that she could not continue counseling because her symptoms were not severe enough. (TR 753-54). Plaintiff's quest for social security benefits is a major theme in the notes from her counseling sessions. (See, e.g., TR 213-218)

Plaintiff was given two mental status examinations in 1999 by psychiatrist, Divy Kikani, M.D. In his initial evaluation, Dr. Kikani diagnosed plaintiff with a depressive disorder and an anxiety disorder. He opined that plaintiff had moderate restrictions in her activities of daily living and social functioning, and that her ability to respond appropriately to others in a work setting and the usual work situation was mildly to moderately impaired. (TR 163-63). He also opined that she "may be expected to show repeated episodes of emotional deterioration and customary work pressure in the usual work-like situation." (TR 163). He found plaintiff to be "mildly to moderately disabled from her current psychiatric condition." (Id.) At the same time, he gave plaintiff a GAF score of 50 (TR 162), indicating serious impairment in social or occupational functioning. DSM-IV-TR at 34. Dr. Kikani gave similar opinions in his second evaluation. (TR 192-93). Dr. Kikani recommended formal psychological testing "for the purpose of diagnosis, prognosis and treatment, especially to rule out secondary gain."[2] (TR 193).

In September of 2004, plaintiff was evaluated by Dr. Anthony Duk, a psychiatric intern. (TR 706-712). Dr. Duk found that plaintiff's ability to perform in the workplace was essentially intact (TR 712) and gave her a GAF score of 65 (TR 711), which indicates only some mild symptoms or some difficulty with social and occupational function, "but generally functioning pretty well." See DSM-IV-TR at 34. Dr. Duk noted that plaintiff had "a fair chance of improving in the next 12 months with active treatment." (TR 711).

---

[2] As the court noted in the report and recommendation in case number EDCV 01-0376-MMM(CT) noted, plaintiff apparently has been arrested for welfare fraud in the past. (TR 733).

7

1    On October 17, 2005, plaintiff was examined consultatively by Dr.
Taylor.  Dr. Taylor also administered the MMPI.[3]  The test results
indicated that plaintiff "did not attempt to present herself in an
overly disturbed manner or minimize any psychiatric disturbance." (TR
734).  "She answered the questions in a consistent and reliable
pattern." (Id.)  The test results also showed "emotional and
psychiatric distress over multiple areas of functioning" and "evidence
of marked depression with significant body concern," excessive concern
over what others think of her and the possibility of "some confused
thinking and a high degree of anxiety." (Id).  Dr. Taylor gave
plaintiff a global assessment of functioning of 55, indicating only
moderate symptoms or moderate interference with social and
occupational functioning.  See DSM-IV-TR at 34.  He opined, among
other things, that her ability to maintain attention, concentration,
persistence and pace was mildly to moderately impaired, her ability to
relate to and interact with co-workers and the public was moderately
impaired, and her ability to adapt to day-to-day work activities was
mildly to moderately impaired.  (TR 735).  He found that her

---

[3]The MMPI is an accepted method of objectively evaluating plaintiff's mental impairments and limitations:

> "The MMPI is the abbreviation for the 'Minnesota multiphasic personality disorder inventory,' defined as '[a]n empirical scale of an individual's personality based mainly on [the individual's] own yes-or-no responses to a questionnaire of 550 items; designed to provide scores on all the more important personality traits and adaptations, and including special validating scales which measure the individual's test-taking aptitude and degree of frankness.'"

Kearney v. Standard Insurance Company, 175 F.3d 1084, 1092 n.3 (9th Cir. 1999)(citation omitted).

"vocabulary and presentation reflect average to high average intellectual functioning and she did seem like a very intelligent person." (TR 733).

Dr. Taylor noted that plaintiff is experiencing a "good deal of depression," as manifested by her MMPI scores and "[h]er emotional condition is complicated by her weight and physical condition." (TR 735). He concluded that plaintiff's depression "would likely impact her ability to consistently maintain employment." (TR 735).

At plaintiff's January 2006 hearing, Dr. David Glassmire, ME, testified. Dr. Glassmire reviewed all plaintiff's records and prior consultative examiner's reports, including Dr. Taylor's report. He also questioned plaintiff at the hearing. He opined that plaintiff had no restrictions in the activities of daily living from a psychological standpoint, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace. (TR 765-66). He also noted that plaintiff had one to two episodes of associative decompensation, but stated that this conclusion was based on two low GAF scores given by plaintiff's doctors. As Dr. Glassmire observed, there is no evidence in the treatment notes that would explain such declines in functioning. (TR 770-74). He limited plaintiff to object-oriented work that was not fast-paced, and involved only occasional, non-personal contact with the public, co-workers and supervisors. (TR 766).

Plaintiff's counsel asked Dr. Glassmire about Dr. Taylor's conclusion that her depression would likely impact her ability to consistently maintain employment. (TR 769). Dr. Glassmire testified that he did not find evidence of restrictions that would prevent her from being able to consistently maintain employment within the

9

restrictions he suggested. (TR 766-67, 770).

The ALJ may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1996). <u>See</u> <u>also</u> <u>Widmark v. Barnhart,</u> 454 F.3d 1063, 1068-69(9th Cir. 2006). Moreover, the ALJ has a special duty to fully and fairly develop the record, even where plaintiff is represented by counsel. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir 2001). The ALJ's duty to "conduct an appropriate inquiry" is triggered if the evidence is ambiguous or if the ALJ determines that the record is inadequate for proper evaluation. <u>Id</u>.

In this case, the ALJ carefully reviewed the evidence of record, including Dr. Taylor's analysis. The ALJ noted Dr. Taylor's finding that plaintiff's depression may impact her ability to consistently maintain employment. (TR 392). However, the ALJ also observed, consistent with the record, that plaintiff's records show "no evidence of a longitudinal history of psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment." (<u>Id</u>.) Ultimately, the ALJ adopted the ME's assessment of plaintiff's capacity to work, finding it to be "highly probative" as it is "consistent with the medical record, is based on objective medical evidence, and takes account of the various recommendations," including those of Dr. Taylor. (TR 393). As Dr. Glassmire explained, Dr. Taylor's opinion is not necessarily inconsistent with his findings, (TR 767), and there is no record evidence indicating that plaintiff could not work consistently within the limited circumstances he described. (TR 770). Where, as here, "'the evidence is susceptible to more than one rational interpretation,'" the Commissioner's

decision must be upheld. Sandgathe v. Chater, 108 F. 3d at 980(citation omitted).

Moreover, Dr. Glassmire's conclusions as to plaintiff's functional limitations are materially consistent with those of the other consultative examiners who assessed plaintiff and are consistent with plaintiff's medical records. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a non-examining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). None of those examiners opined that plaintiff's psychological condition could prevent her from consistently maintaining employment. Dr. Kikani, who evaluated plaintiff in 1999, stated that she may be expected to show mild to moderate emotional deterioration, but only "under customary work pressure, in the usual work like situation." (TR 193). As noted, Dr. Glassmire opined that plaintiff could work under restricted conditions which would significantly lower the pressures of work.

Although plaintiff has grave obesity and a serious mental impairment, the ALJ took the limitations caused by her depression into account when he adopted the ME's very restrictive RFC. The ALJ's consideration of Dr. Taylor's opinions is free from material legal error and supported by substantial evidence.

### B. Hypothetical Posed to Vocational Expert

Plaintiff also contends that the ALJ's hypothetical to the VE was incomplete because it did not include Dr. Taylor's conclusion that plaintiff's depression would impact her ability to consistently maintain employment.

The hypothetical that the ALJ posed to the VE contained all of

11

the limitations that the ALJ found credible and supported by the record.  Accordingly, the ALJ's reliance on the testimony given by the VE in response to that hypothetical was proper.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005).  As discussed above, the ALJ's consideration of the opinions of Dr. Taylor was free from material error and supported by substantial evidence.

### C. Credibility Determination

Plaintiff further claims that the ALJ erred in not properly assessing her credibility.

The ALJ must consider plaintiff's testimony concerning her subjective complaints and how her symptoms affect her daily activities and ability to work.  <u>See</u> 20 C.F.R. § 416.929.  To reject a plaintiff's subjective complaints, the ALJ must provide "'specific, cogent reasons for the disbelief.'" <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)(citation omitted).  In the absence of evidence of malingering, the reasons must be "clear and convincing." <u>Id</u>.  If the ALJ determines that plaintiff's testimony concerning the intensity of pain or other limitations is not fully credible, the ALJ must "specifically identify what testimony is credible and what testimony undermines the [plaintiff's] complaints." <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d at 599(citation omitted).  "In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." <u>Id</u>. (citations omitted).

Here, the ALJ considered plaintiff's testimony and his RFC assessment is not inconsistent with that testimony.  Plaintiff testified that she cannot work because she can't stand for a long time, her shoulder hurts and "I just hurt all the time," (TR 339), and that she cannot sit for extended periods.  (TR 354-55). However, the

ALJ limited her to a very narrow range of light work limited to essentially sitting with brief periods (15 minutes) of standing and walking. (TR 393, 94, 782). Moreover, with respect to her complaints of depression, the ALJ found she had a severe impairment, but that there is no basis for finding that her depression would preclude the performance of simple, repetitive work activities. (TR 392). The ALJ specifically noted that there was "no evidence of a longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment" and that she had received no psychiatric treatment since November 2001. (Id.) These findings are supported by substantial evidence and are legitimate reasons for rejecting plaintiff's allegations to the extent that she claims to have disabling depression. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(conservative treatment and failure to seek treatment legitimate reasons for discounting credibility); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(ALJ properly rejected obese plaintiff's testimony concerning her depression and fatigue based on her lack of current treatment for those conditions).

In addition, the prior ALJ gave legally sufficient reasons for discounting plaintiff's allegations of disabling impairments, including that plaintiff's own treating physician suggested she seek work through a temporary agency. (See TR 199, 238-244). The stipulated remand did not seek re-evaluation of plaintiff's credibility. (TR 432-33).

The ALJ's consideration of plaintiff's testimony is free from material error and supported by substantial evidence.

### D. Lay Witness Testimony

Finally, plaintiff contends that the ALJ erred by failing to

address a 2001 third party statement by her mother.

In determining whether a plaintiff is disabled, an ALJ must consider lay witness testimony concerning a plaintiff's ability to work. Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)(citations omitted). Lay testimony "as to a [plaintiff's] symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." Id. (citations omitted)(ALJ erred in ignoring lay testimony from plaintiff's sister and a letter from plaintiff's brother-in-law, with whom plaintiff had worked). Consequently, "[i]f the ALJ wishes to discount the testimony of the lay witness, he must give reasons that are germane to each witness for doing so." Id. (citations omitted). Further, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056.

Here, the ALJ's decision does not specifically address the 2001 statement by plaintiff's mother. However, the ALJ specifically reviewed all the evidence of record. (TR 391). Moreover, the materiality of plaintiff's mother's statements is questionable given that the relevant questionnaire was filled out in 2001, approximately five years ago. In addition, plaintiff's mother's statements are not inconsistent with the very limited RFC assessed by the ALJ. Her mother stated essentially that plaintiff complains of pain in her legs, arms, chest, feet, is "unable to sleep good [due] to pain" and "cannot sit [too] long or stand or lay down." (TR 545). As discussed

above, the ALJ limited plaintiff to mostly sedentary work with brief periods of standing or walking to accommodate plaintiff's mobility and other limitations due to pain.  (See TR 394, 782).

Accordingly, the ALJ's consideration of the 2001 third party statement by plaintiff's mother is free from material legal error and supported by substantial evidence.

## CONCLUSION

Plaintiff clearly has severe impairments and is struggling with extremely serious obesity, which, if not adequately addressed, will likely take an increasing toll on her.  However, a plaintiff who can still perform work in the national economy, even with a severe impairment, is not disabled as that term is defined by the Act.  See generally Baxter v. Sullivan, 923 F.2d 1391, 1395(9th Cir. 1991). Furthermore, if the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner.  Flaten v. Secretary of Health and Human Services, 44 F.3d at 1457.

After careful consideration of the record as a whole and the issues raised by plaintiff before this court, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error.

ACCORDINGLY, IT IS RECOMMENDED that judgment be entered in favor of the Commissioner.

DATED: December 18, 2006

*CAROLYN TURCHIN*
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

15